UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MATTHEW BOLAND,                    :
    Plaintiff,                       :
                       :
v.                                 :          3:18cv1958 (MPS)
                       :
WILKINS, et al.,                   :
    Defendants.                      :

## RULING ON MOTION FOR SUMMARY JUDGMENT

On November 30, 2018, the plaintiff, Matthew D. Boland, a *pro se* inmate currently confined at the Cheshire Correctional Institution ("Cheshire") of the Connecticut Department of Correction ("DOC"), brought a civil rights action under 42 U.S.C. §§§§ 1983, 1985, 1986, and 1988 against five DOC officials: Lieutenant Wilkins, Correctional Officer Orengo, Correctional Officer Duquette, Correctional Officer Mulligan, and another official named Mendez. Compl. (ECF No. 1). In an amended complaint filed on December 14, 2018, Boland alleged violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Am. Compl. (ECF No. 7). He also raised state law claims of intentional infliction of emotional distress, assault, and battery. *Id.* at ¶¶ 14-16.

In an initial review order, the court permitted Boland's Eighth Amendment claims of excessive force and state law claims of assault and battery to proceed against Correctional Officer Orengo, Correctional Officer Duquette, and Lieutenant Wilkins ("the Defendants") in their individual capacities for damages. (ECF No. 16). All other claims were dismissed. *Id.*

The Defendants have filed a motion for summary judgment, arguing that they have not violated the Eighth Amendment and cannot be held liable for assault and battery. (ECF No. 39). Boland has filed opposition papers. (ECF No. 49).

## I.     STANDARD OF REVIEW

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation but must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). The Court construes the record in the light most favorable to the non-moving party. *Hoyt v. Andreucci*, 433 F.3d 320, 327 (2d Cir. 2006).  Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## II.    FACTS[1]

The Defendants have filed a Local Rule 56(a) statement of facts, with supporting exhibits, including video footage of the alleged incidents of misuse of force.   Boland has filed an opposition brief, a statement of disputed facts, and exhibits. These materials reflect the following background.[2]

On March 6, 2016, Boland was in a physical altercation with another inmate at Cheshire. Defs.' SMF at ¶ 1. Correctional Officer Orengo, Correctional Officer Duquette, and Lieutenant Wilkins were all involved in the response to the incident. *Id.* at ¶ 2.

After Correctional Officer Duquette ordered Boland to cease and desist all actions toward the other inmate, he complied and was secured to the floor. *Id.* at ¶ 3. At this point, Correctional Officer Orengo assisted Correctional Officer Duquette by stabilizing Boland on the floor on while handcuffs were applied by Duquette.[3] *Id.* at ¶ 5; Pl.'s SDF at ¶ 5. Boland was secured to

---

[1]The relevant facts are taken from the Defendants' Local Rule 56(a)1 Statement with attached exhibits ("Defs.' SMF") (ECF No. 39-7); and Boland's opposition (Pl.'s Opp.) (ECF No. 49-1), Statement of Disputed Facts ("Pl.'s SDF") (ECF No. 49-2) and exhibits (Pl.'s Opp. Ex.) (ECF No. 49-3). All of the facts set forth herein are undisputed unless otherwise indicated.

[2]  Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Local Rule 56(a)3 provides that "each denial in an opponent's Local Rule 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." The docket shows that the Defendants informed Boland of these rules in a Notice to *Pro* Se Litigant pursuant to Local Rule 56(b). (ECF No. 39-8). Although his opposition does not provide a statement of facts in strict compliance with Local Rule 56(a)2, Boland has provided a statement of disputed facts that is responsive to the Defendants' Rule 56(a)1 factual statements. (ECF No. 49-2.).

[3]Boland does not assert that Officer Duquette applied excessive force during the handcuffing process. Defs.' ex. 4, Pl.'s Dep. at 54.

the floor until the other inmate with whom he had had the physical altercation was removed from the scene. *Id.* at ¶ 6. see Defs' ex. 4, Pl.'s Dep. at 36; s*ee also* Defs' ex. 3-1 at :26-:50.

While he was being held down, Boland was able to speak, but he asserts that he informed the correctional staff that he could not breathe. Defs.' SMF at ¶ 7. In his deposition, Boland stated that he was struggling to breathe due to the weight of the officers who were holding him face down with his head turned toward the right, and that he told them to get off of him because he could not breathe. *See* Defs.' ex. 4, Pl.'s Dep. at 34-38. Boland has acknowledged he was already "out of breath" when the officers responded to his "scuffle" with the other inmate. *Id.* at 37.

Under the direction of Lieutenant Wilkins, Correctional Officers Orengo and Duquette assisted Boland to his feet and commenced escorting him out of the housing unit where the physical altercation had occurred. Defs.' SMF at ¶ 11. During this escort, Boland and the escorting officers approached an area where a food cart and a juice cart were located. *Id.* at ¶ 13; *see also* Defs' ex. 2, video at 1:40. The approximately six-foot high food cart was located next to a three-foot high juice cart; neither cart was moving at the time that Boland's escort approached the area. *Id.*

As the escort approached the area with the carts, Boland kicked the juice cart. *See* Defs' ex. 4, Pl.'s Dep. at 47; ex. 2 at 1:40. In his deposition, Boland stated,

> I kicked the juice cart .... Like it was stupid for me to do it, but I was aggravated or whatever, and I kicked the juice cart, and they were walking me into it. Like I'm sure they were planning on walking me next to it, but I never pulled away from them or nothing. I kicked the juice cart.

*See* Defs' ex. 4, Pl.'s Dep. at 47.[4] Correctional Officers Orengo and Duquette then secured Boland to a nearby wall, *id.* at ¶ 16, and Lieutenant Wilkins deployed a burst of chemical agent to Boland's facial area. *Id.* at ¶ 18; *see* Defs.' ex. 2 at 1:42. Boland was thereafter examined by medical staff, at which time he denied any injury or discomfort. *Id.* at ¶ 20. Boland maintains that he did not become aware of his injury until the adrenaline and effects of the chemical agent wore off. Pl.'s Opp. at ¶ 10.

On March 19, 2016, Boland reported extreme pain to his jaw and was transported to the UConn Medical Center Emergency Room for further evaluation. *Id.; see* Pl.'s Opp. Exs. 7-8.

## III.   DISCUSSION

Boland claims excessive force on the basis of Correctional Officer Orengo's holding him down (while Boland was cuffed behind his back) and continuing to apply pressure to Boland, despite Boland's statements that he could not breathe. *See* Pl.'s Opp. at ¶¶ 9-10. In his Statement of Disputed Facts, Boland asserts that Lieutenant Wilkins used excessive force by spraying him with a chemical agent while he was cuffed and stabilized against a wall, and that Correctional Officers Duquette and Orengo could have intervened to prevent Boland from being sprayed with the chemical agent. Pl's SDF at ¶¶ 1, 3, 4; see also Boland's depo., ECF No. 39-4 at 16 ("[T]he excessive force with Orengo and Duquette was when I was on the floor, and excessive force with Wilkins was when he maced me.").

The Eighth Amendment protects against punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). An inmate alleging excessive force in violation of the Eighth Amendment has the burden of establishing both an

---

[4]  In his opposition papers, Boland maintains that he kicked the juice cart because it was in his way and made it impossible for him to proceed through the doorway. ECF No. 49 at 2.

objective and a subjective component of his claim. *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000); *see also Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

To meet the objective component, the inmate must show that the defendant's conduct was serious enough to have violated "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (internal quotation marks and citation omitted). A *de minimis* use of force will rarely be sufficient to satisfy the objective component unless that force is also "repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted)). However, it is the force used, not the injury sustained, that "ultimately counts." *Id.* "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 at 9. The inmate need not have suffered a significant injury as a result of the defendant's conduct to satisfy the objective component. *See Wilkins*, 559 U.S. at 37 (2010).

The subjective component requires the inmate to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986)). The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotations and citation omitted).

Officers are liable not only when they use excessive force themselves, but also when they fail to intervene to stop the excessive use of force by another officer when they are in a position to observe the conduct and have time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019). "Liability attaches on the theory that the officer, by failing to intervene, becomes

6

a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citation and quotation omitted).

1.   Holding Boland Down

The Defendants argue that Boland cannot satisfy the Eighth Amendment standard for excessive force because he was able to speak while he was pressed to the floor. Defs.' Mem. in Support at 3 (ECF No. 39-6). The Defendants also point out that Boland admitted he was already out of breath at the time due to his recent altercation with the other inmate. *Id.*

When the record is construed in the light most favorable to Boland as the non-moving party, it shows that Boland acted in compliance with the officers' order at the time he was being held down on the floor. Thus, the evidence raises a question of whether Correctional Officer Orengo's continued application of pressure on Boland was necessary to hold Boland in his position on the floor. Boland's deposition testimony that he expressed he was having difficulty breathing while Correctional Officer Orengo continued to apply pressure creates a genuine issue of disputed fact about whether Orengo used force for malicious or sadistic reasons rather than legitimate penological reasons. *See* Defs.' ex. 4, Pl.'s Dep. at 34-36. Neither the fact that Boland could speak nor his admission of being out of breath due to his prior altercation would prevent a reasonable jury from finding that Correctional Officer Orengo applied excessive force in this instance.

The Defendants assert that the video of the incident shows that Boland was secured in a reasonable manner. Defs.' Memorandum (ECF 39-6 at 4); *see* Defs.' ex. 3-1. Where the parties present conflicting versions of an incident and video evidence of the incident has been submitted on a motion for summary judgment, the court must view the facts "in the light depicted" by the video of the incident. *See Scott v. Harris,* 550 U.S. 372, 380–81 (2007).

As is often the case with video footage inside a prison, however, the footage in this case does not present so clear a depiction of the events that no reasonable jury could believe Boland's version.   The video was taken by a camera stationed at a high location in the prison facility room. The video first shows that after inmates appear to finish eating a meal, two inmates start fighting at the side of the room, and officers respond by breaking up the fight and securing each inmate. Defs.' ex. 3-1 at :26-:50. The video appears to show Boland prone on the floor, with an officer on his back for a significant period of time.   But the video contains no sound and does not depict the correctional officers' response within close enough range for the court to determine as a matter of law that Officer Orengo did not maliciously or sadistically continue to apply pressure to Boland after he heard Boland say that he was struggling to breathe. As the video fails to establish as a matter of law that Officer Orengo did not apply excessive force, the court must deny the motion for summary judgment on the claim of excessive force against Correctional Officer Orengo.

Because disputed issues of fact exist concerning Correctional Officer Orengo's application of force, there are also questions of fact as to whether Correctional Officer Duquette may be held liable for failure to intervene to prevent a misuse of force. *See Brown v. Neddermann*, No. 3:18-CV-00577 (KAD), 2020 WL 60107, at *6 (D. Conn. Jan. 6, 2020) ("[Failure to intervene claim] is derivative of and dependent upon the Plaintiff's excessive force claim, for which the Court has already identified at least one genuine material fact in dispute. If the jury concludes that one or both of the Defendants used excessive force during the Plaintiff's arrest, the jury would then need to determine whether either defendant could have intervened with respect to the other's unconstitutional[.]"). There is evidence that Duquette was involved in cuffing Boland and, thus, was close enough to intervene.   Accordingly, disputed issues of fact

preclude entry of summary judgment on Boland's claim that Correctional Officer Orengo used excessive force in holding him down and that Correctional Officer Duquette failed to intervene.

    2.    <u>Use of a Chemical Agent</u>

The Defendants maintain that Lieutenant Wilkins applied the chemical agent in good faith to restore order rather than maliciously or sadistically. Defs.' Mem. in Support at 5 (ECF No. 39-6).

"When reviewing the use of a chemical agent against a recalcitrant inmate, the court can find a constitutional violation only where the use of the chemical agent is malicious and sadistic. That the use may have been objectively unreasonable is insufficient to establish an Eighth Amendment claim." *Carolina v. Pafumi*, No. 3:12-CV-163 VLB, 2013 WL 1673108, at *3 (D. Conn. Apr. 17, 2013). Correctional staff's use of a chemical agent on a "recalcitrant inmate" to force compliance with direct orders is not "malicious and sadistic," but rather a good faith effort to restore order. *See Vazquez v. Spear*, No. 12-cv-6883 (VB), 2014 WL 3887880, at *5 (S.D.N.Y. Aug. 5, 2014)("[T]he use of single burst of a chemical agent, which is not a dangerous quantity, is not an unacceptable means of controlling an unruly or disruptive inmate.").

The Defendants have again supplied video evidence in support of their motion for summary judgment. Defs.' ex. 2 and 3-2. The two pertinent videos show that the officers immediately secured Boland to the wall after he kicked the juice cart during his escort; and that Boland received a short burst of chemical agent to this face as he was secured to the wall. Defs.' ex. 2 at 1:40-2:10; ex. 3-1 at :50-:56. A voice on exhibit 2 can be heard explaining that Boland should expect to be sprayed another time if he continued such misconduct.[5] Defs.' ex. 2 at 2:06-

---

[5] The exact statement is difficult to discern due to the sound of coughing on the video.

2:09.

Upon review of the evidence, the court notes that the application of the chemical agent was extremely brief – so brief that it takes a slow motion review of the video to spot it. Further, it was deployed immediately after Boland kicked the juice cart and was moved to the wall, and before it was clear that he was fully secured and would be compliant.  By Boland's own admission, his lashing out by kicking the juice cart was "stupid" and done while he was "aggravated," ECF No. 39-4; especially given that the officers had just broken up a fight between him and another inmate, Boland's conduct created an unstable situation, and thus a threat to prison security, during his escort. The videos reflect that once Boland was fully stabilized against the wall, the escort resumed. Defs.' ex. 2 at 2:20; ex. 3-1 at :55-:56. Under these circumstances, Lieutenant Wilkins's use of the chemical agent did not violate Eighth Amendment standards as it was applied for legitimate penological reasons to maintain order or discipline. On this record, no reasonable juror could find that Lieutenant Wilkins was acting sadistically or maliciously at the time. Because Lieutenant Wilkins is entitled to entry of summary judgment in his favor on this claim, the derivative failure to intervene claims also fail and entry of summary judgment on the claims against Correctional Officers Orengo and Duquette is appropriate. *See Reed v. Roberts*, No. 3:18CV809 (KAD), 2020 WL 584355, at *6 (D. Conn. Feb. 6, 2020).

Alternatively, even if the Defendants' conduct in connection with the deployment of the chemical agent violated the Eighth Amendment, the Defendants would be entitled to qualified immunity as a reasonable officer would not have known that he or she was violating the Eighth Amendment under similar circumstances. *See Ziglar v. Abbasi,* 137 S. Ct. 1843, 1867 (2017) ("If a reasonable officer might not have known for certain that the conduct was unlawful – then the

officer is immune from liability."); *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) ("summary judgment is appropriate when a trier of fact would find that reasonable officers could disagree."). Accordingly, the court grants summary judgment to the Defendants on this claim.

3.    Assault and Battery

Boland has asserted state law claims of assault and battery against the Defendants.

Under Connecticut law, "[a]n authorized official of a correctional institution or facility may, in order to maintain order and discipline, use such physical force as is reasonable and authorized by the rules and regulations of the Department of Correction." Conn Gen. Stat. § 53a-18 (a) (2). "

Administrative Directive (A.D.) 6.5.(4)(A) (in effect at the time relevant to this action)[6] provided:

> A Department employee may use physical force on an inmate to maintain discipline, order, safety and security while in the performance of the employee's official duties. The amount of force used shall be reasonable and appropriate to the circumstances based on the situation, the information in the possession of correctional personnel at the time, and the information reasonably available under the circumstances.

Def's ex. 38-9. Moreover, the Administrative Directive also permitted the use of reasonable physical force to maintain order and discipline. *Id.* at A.D. 6.5(5)(A). At A.D. 6.5(7)(D)(1), the Directive specifically authorized the use of a chemical agent by a trained correctional staff in circumstances involving a threat posed by the inmate such as, *inter alia*, "active aggression, presence of weapons, known history of assaultive behavior, inmate's non-compliance with lawful orders[.]"

---

[6]    The Defendants have provided a copy of this administrative directive as exhibit 9. Boland has not disputed that it was the administrative directive in effect at the time.

11

Because Lieutenant Wilkins's use of the chemical agent was authorized under A.D. 6.5 and did not violate Eighth Amendment standards, the court will grant the motion for summary judgment in the Defendants' favor on the assault and battery claim based on Lieutenant Wilkins's use of a chemical agent.

However, disputed issues of fact preclude the entry of summary judgment on Boland's claim against the Correctional Officer Orengo's use of force in holding him down on the floor. Accordingly, the motion for summary judgment is denied on the assault and battery claim against Correctional Officer Orengo.

## IV.     CONCLUSION

For the reasons stated above, the motion for summary judgment is GRANTED in part and DENIED in part. The court GRANTS the motion for summary judgment on Boland's Eighth Amendment excessive force and state law assault and battery claims based on Lieutenant Wilkins's use of the chemical agent.   The court DENIES the motion for summary judgment on Boland's Eighth Amendment excessive force claims against Correctional Officer Orengo based on his holding Boland down on the floor and against Correctional Officer Duquette based on his failure to intervene; and on the state law assault and battery claim against Correctional Officer Orengo.

                              /s/
                         Michael P. Shea
                         United States District Judge

**SO ORDERED** this 21st day of July 2020, at Hartford, Connecticut.