UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
MATTHEW D. BOLAND            :    3:18CV01958(MPS)
                             :
v.                           :
                             :
WILKINS, et al.             :    May 25, 2021
                             :
-----------------------------x
```

## ORDER ON PLAINTIFF'S PETITION FOR WRIT OF HABEAS CORPUS AND MOTION REQUESTING APPROVAL TO INCUR EXPENSES

This matter has been referred to the undersigned for rulings on two motions: (1) a motion styled as a "Petition for Writ of Habeas Corpus" [Doc. #81] ("the Petition") and (2) a "Motion Requesting Approval to Incur Expenses from Court Fund Related to Security/Transportation of Plaintiff to His Expert's Office to Conduct Independent Medical Examination" [Doc. #82] filed by plaintiff Matthew Boland ("plaintiff" or "Boland"). See Doc. #84. For the reasons set forth herein, plaintiff's Petition [**Doc. #81**] is **DENIED** and the Motion Requesting Approval to Incur Expenses [**Doc. #82**] is **TERMINATED, as moot.**

## I.   Background

Plaintiff, who is currently incarcerated at Corrigan-Radgowski Correctional Center in the Radgowski Building ("Radgowski"), brings this action in relation to an incident that occurred on March 6, 2016, at Cheshire Correctional Institution. See Initial Review Order, Doc. #16 at 1-2. Plaintiff alleges that

1

a fellow inmate threatened him, and attempted to hit him; in response, plaintiff "grabbed him in defense to stop the attack." Id. at 3. Correction officers "responded to the cell and ordered the plaintiff to stop fighting and get on the ground." Id. at 3. Plaintiff asserts that when he complied with the order, "Officer Orengo placed his knee into his back and pushed his face onto the floor[,]" and Officer Duquette placed plaintiff in handcuffs. Id. Plaintiff contends that this use of force "damaged a vertebra in the plaintiff's back." Id. While plaintiff was being escorted out of the unit he kicked a food cart, leading Lieutenant Wilkins to discharge chemical agent into plaintiff's face. See id. Plaintiff contends that Officers Orengo and Duquette then lifted him "off the ground and slammed him into the wall, causing" injuries. Id. (citation and quotation marks omitted).

Plaintiff initially appeared as a self-represented party. See Doc. #1. On April 15, 2019, Judge Shea entered an initial review order pursuant to 28 U.S.C. §1915A, allowing plaintiff's Eighth Amendment excessive force claim, as well as his state law assault and battery claims, to proceed against defendants Orengo, Duquette, and Wilkins (collectively, "the defendants") in their individual capacities. See generally Doc. #16. On July 21, 2020, Judge Shea granted defendants' motion for summary judgment in part. See Doc. #55. After the summary judgment ruling, the claims remaining are plaintiff's Eighth Amendment excessive force claims

against Orengo for holding plaintiff down on the floor and against Duquette for failure to intervene, and his state law assault and battery claim against Orengo. See id. at 12.

On July 27, 2020, Judge Shea directed the Clerk of Court to appoint pro bono counsel to represent plaintiff. See Doc. #56. On August 27, 2021, Attorney Edward Mark Schenkel ("Attorney Schenkel" or "counsel") appeared on behalf of plaintiff. See Doc. #63. On October 7, 2020, Attorney Schenkel filed a motion requesting approval to incur expenses to retain a medical expert to examine plaintiff, particularly in relation to his alleged jaw injury. See Doc. #74. Judge Shea granted that motion, writing that the Court will "reimburse the expense of such expert up to a maximum of $1,500." Doc. #75.

On March 22, 2021, plaintiff filed the Petition, requesting that the Court order the State of Connecticut ("the State") to produce plaintiff, an inmate in state custody, "for the limited purpose of transporting Plaintiff from [the DOC facility] where he is currently confined, to and from the office of Plaintiff's medical expert, ... for the sole purpose of conducting an [IME], with appropriate security detail." Doc. #81 at 1. He also filed a motion to "incur expenses from the Court's fund in an amount equal to the fee incurred for the transportation of Plaintiff to and from his medical expert's office[.]" Doc. #82 at 1.

On March 29, 2021, the Court entered an Order taking the Petition under advisement. See Doc. #85. That Order stated, inter alia:

> The Court greatly appreciates the efforts made by appointed counsel to secure a potential expert in this matter, and understands the contention that an examination is necessary. However, plaintiff cites no statute or rule that provides authority for the Court to order the State of Connecticut to produce plaintiff at a private medical office for an IME. Nor has he cited any authority for an order of this Court directing the State to release plaintiff on a temporary basis for that purpose.

Id. The Court further noted that "Rule 35 does not authorize a party to file a motion for his own physical examination." Id. (citation and quotation marks omitted). The Court directed plaintiff to "file a supplemental memorandum in support of the [Petition] providing any authority plaintiff contends would support the relief sought." Id. Plaintiff filed the supplemental memorandum on April 22, 2021, see Doc. #94, and defendants filed their Objection to the Petition on May 1, 2021. See Doc. #97.

## II.  **Discussion**

Plaintiff seeks an order from this Court directing the State to transport plaintiff from Radgowski to the office of Dr. Cuicci, plaintiff's putative medical expert, in Milford, Connecticut. See Doc. #81 at 1. Plaintiff asserts that he needs to visit Dr. Cuicci "for the purpose of conducting an independent medical examination ("IME")." Doc. #82 at 1. As the Court noted in its order taking the instant motions under advisement, however, an IME, at least as

4

it is contemplated by Rule 35, is, by definition, an examination of <u>another</u> party, rather than an examination of the <u>requesting</u> party. <u>See</u>, <u>e.g.</u>, <u>Berg v. Prison Health Servs.</u>, 376 F. App'x 723, 724 (9th Cir. 2010) ("Rule 35 does not allow for a physical examination of oneself[.]"); <u>Smith v. Carroll</u>, 602 F. Supp. 2d 521, 526 (D. Del. 2009). Plaintiff here does not ask that the Court order a party to undergo an IME. Rather, plaintiff asks the Court to order the State Department of Correction to transport him outside of the prison and judicial system so that he may voluntarily undergo a medical examination. The Court therefore does not use the term "IME" to refer to the requested examination.

Plaintiff asserts that the examination by Dr. Cuicci "is absolutely critical for Plaintiff to prove his damages arising out of the excessive force claims against Defendants." Doc. #81 at 1. Dr. Cuicci is a maxillofacial surgeon, whose "expertise is necessary due to the nature of the injuries Plaintiff allegedly sustained[]" to his face and jaw. Doc. #94 at 3.

Defendants object to plaintiff's motion, and have attempted to offer alternatives. Specifically, counsel for defendants indicated that DOC would permit Dr. Cuicci to conduct the examination at Radgowski, but plaintiff's counsel stated that would be impossible because Dr. Cuicci "needs his office/equipment." Doc. #97 at 1. Defense counsel then indicated that the State could transport plaintiff to UConn Health Center,

which routinely handles inmate patients, and has a secure unit able to accommodate such patients, for the examination. <u>See</u> <u>id.</u> at 1-2. Defense counsel further offered to assist in an effort to obtain temporary privileges for Dr. Cuicci so that he could perform the examination at UConn Health Center. <u>See</u> <u>id.</u> at 2. Plaintiff's counsel again indicated this was not an option, as Dr. Cuicci could not commit the time that travel to the facility would require. <u>See</u> <u>id.</u>

Defendants contend that the Court "does not have authority, under the circumstances of this action, to order a state correctional department to transport an inmate to a private medical provider['·]s office so that he may function as an expert for the plaintiff in civil litigation." <u>Id.</u> at 3. Defendants further argue that plaintiff has failed to establish that it is necessary to conduct the examination at Dr. Cuicci's office, rather than at Radgowski or UConn Health Center: "The purpose of examination in Milford is exclusively for the convenience of the expert[.]" <u>Id.</u>

Construing plaintiff's motions and memoranda generously, the Court considers three possible theories under which the requested Order is sought: (1) Rule 35; (2) 28 U.S.C. §2241; (3) the All Writs Act.

**A.   Rule 35**

As noted, the Court has no authority to <u>order</u> a medical examination of plaintiff, at plaintiff's own request, under the Federal Rules. Rule 35 allows the Court to "order a party whose mental or physical condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). "Rule 35 generally governs requests made by one party to require another party to submit to a medical examination." <u>Funderburke v. Canfield</u>, No. 13CV06128(FPG)(MWP), 2014 WL 6390577, at *1 (W.D.N.Y. Nov. 7, 2014). Rule 35 "does not authorize a party to file a motion for his own examination." <u>Brown v. Dirga</u>, No. 3:15CV01086(JCH)(SALM), 2016 WL 2743486, at *1 (D. Conn. May 11, 2016) (quoting <u>Jenkins v. Doe</u>, No. 3:09CV01194(SRU)(WIG), 2011 WL 121682, at *1 (D. Conn. Jan. 13, 2011)); <u>see</u> <u>also</u> <u>Baltas v. Maiga</u>, No. 3:20CV01177(MPS), 2021 WL 1299505, at *1 (D. Conn. Apr. 7, 2021)("A plaintiff cannot use Rule 35 to obtain medical care for himself."). Here, plaintiff seeks an order requiring the State to produce him for an examination at his medical expert's office, in order for him to obtain evidence to support his civil claims against defendants. Rule 35 does not permit the Court to order a medical examination in such circumstances. <u>See</u> <u>Baltas</u>, 2021 WL 1299505, at *1 (A plaintiff "cannot use Rule 35 to get a free examination of himself for use as evidence in his case[.]"). "Courts faced

7

with this issue have consistently concluded that Rule 35 may not
be used by a section 1983 inmate plaintiff to ... obtain expert
witness testimony to advocate on the plaintiff's behalf." Cottle
v. Nevada Dep't of Corr., No. 3:12CV00645(MMD)(WGC), 2013 WL
5773845, at *2 (D. Nev. Oct. 24, 2013) (collecting cases).

   **B.   28 U.S.C. §2241**

   In his original motion, plaintiff relied on 28 U.S.C. §2241,
arguing that a petition for habeas corpus under this provision is
"appropriate for a prisoner seeking medical treatment, such as an
independent medical examination." Doc. #81 at 3. Plaintiff's
reliance on this statute is substantively misplaced:

> The case plaintiff cites for that position ... is
> inapposite, and indeed does not involve an IME at all.
> Rather, it simply observes that "[p]etitions challenging
> the medical treatment afforded during confinement are
> properly brought as Section 2241 habeas petitions."
> Malarney v. United States, 11CV00854(RRM) (E.D.N.Y. June
> 18, 2013). Plaintiff here does not challenge medical
> treatment provided in prison; rather, his claims are
> limited to excessive force and state law assault and
> battery. See Doc. #16.

Doc. #85.

   Furthermore, the Malarney decision cited by plaintiff -- and,
in turn, the cases relied on by Malarney -- involved inmates in
federal custody. See, e.g., Jiminian v. Nash, 245 F.3d 144, 146
(2d Cir. 2001) ("A motion pursuant to §2241 generally challenges
the execution of a federal prisoner's sentence[.]"); Allen v.
Lindsay, No. 09CV01283(KAM), 2010 WL 5067907, at *2 (E.D.N.Y. Dec.
7, 2010) ("Allen, a federal inmate, challenges the medical

attention and treatment provided at MDC Brooklyn."). Mr. Boland is in state custody. A <u>state</u> prisoner generally "must[] bring a challenge to the execution of his or her sentence ... under section 2254. A petition under section 2241 is therefore unavailable to him." <u>Cook v. New York State Div. of Parole</u>, 321 F.3d 274, 278 (2d Cir. 2003). "The Second Circuit has ruled that section 2254 is the exclusive procedural pathway for a sentenced state prisoner's challenge in federal court to the execution of her sentence." <u>Griffin v. Cook</u>, No. 3:20CV00589(JAM), 2020 WL 2735886, at *3 (D. Conn. May 26, 2020).[1]

In sum, relief is not available to Boland under §2241. Even if a petition under §2241 were <u>generally</u> available to plaintiff, as a sentenced state inmate, it would not be available in <u>this</u> action, where plaintiff's Complaint does not bring a claim that he is currently being deprived of medical care.

### C.   All Writs Act

Plaintiff's supplemental memorandum asserts that the Court has authority to grant plaintiff's Petition pursuant to the All

---

[1] To the extent <u>McPherson v. Lamont</u>, 457 F. Supp. 3d 67, 78 (D. Conn. 2020), supports a contrary conclusion, the undersigned, like the <u>Griffin</u> Court, declines to adopt its reasoning here. <u>Cf.</u> <u>Rodriguez v. Wolcott</u>, No. 6:20CV06327(EAW), 2020 WL 2833016, at *2 (W.D.N.Y. June 1, 2020) ("[T]he Second Circuit made it clear in <u>Cook</u> that §2241 does not encompass the same claims by state court prisoners as it does for federal prisoners."). In addition, the plaintiffs in <u>McPherson</u>, a mixed class of pre-trial detainees and sentenced inmates, expressly sought to challenge "the current health conditions of their confinement," which Boland does not. <u>McPherson</u>, 457 F. Supp. 3d at 75.

Writs Act, which provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a).

As the Court observed in its order taking the motion under advisement, district courts have the authority to issue writs requiring the production of state inmates for various purposes. "The statutory authority of federal courts to issue writs of habeas corpus ad prosequendum to secure the presence, for purposes of trial, of defendants in federal criminal cases, including defendants then in state custody," is well established. United States v. Mauro, 436 U.S. 340, 358 (1978). There is no claim that the writ of habeas corpus ad prosequendum applies here.

A federal court can issue a writ of habeas corpus ad testificandum to "command a witness' presence for purposes of testimony[.]" Carmona v. Warden of Ossining Corr. Facility, 549 F. Supp. 621, 622 (S.D.N.Y. 1982). But such a writ is not automatically issued; rather, when considering a writ of habeas corpus ad testificandum, the Court must exercise discretion. "The party seeking a writ of habeas corpus ad testificandum bears the burden of demonstrating necessity." Davidson v. Desai, 964 F.3d 122, 131 (2d Cir. 2020). An inmate who brings a civil action has no right even to attend his own trial, and a court may conclude that the "expense and security concerns outweigh the plaintiff's

interest in physically appearing at trial," particularly where an adequate substitute for in-person production of the plaintiff exists. <u>Twitty v. Ashcroft</u>, 712 F. Supp. 2d 30, 33 (D. Conn. 2009). The Second Circuit has expressly directed trial courts to "consider alternatives to reduce the burdens" that compliance with such writs imposes, including "taking testimony at the prison[.]" <u>Rivera v. Santirocco</u>, 814 F.2d 859, 864 n.8 (2d Cir. 1987); <u>see also</u> <u>United States v. Mandel</u>, 857 F. Supp. 253, 255 (E.D.N.Y. 1994) (denying writ for incarcerated party to appear at trial where "the government has presented several options other than defendant's physical production which would serve the interests of justice at a lower cost to the taxpayers[]").

Plaintiff's presence is not sought for testimony at a trial, and the writ of habeas corpus ad testificandum provides no authority for the relief sought. However, the Court takes into consideration the case law surrounding such writs in evaluating the propriety of issuance of a writ here.

Plaintiff relies, as noted, on the All Writs Act.

The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.

Pennsylvania Bureau of Correction v. U.S. Marshals Serv., 474 U.S. 34, 43 (1985).

There is little case law available on use of the All Writs Act to order transport of a sentenced inmate outside of the secure prison facility where he is held. Plaintiff acknowledges that in the leading case on point, the Seventh Circuit held that the District Court did not have the authority, under 28 U.S.C. §2241 or §1651(a), to order the State of Illinois to transport an incarcerated plaintiff to and from the office of a doctor plaintiff intended to use as a medical expert in his §1983 case. See Ivey v. Harney, 47 F.3d 181, 182-86 (7th Cir. 1995). Plaintiff argues "that the holding of Ivey should be narrowly construed, and should not serve as a blanket holding that a prisoner is prohibited from filing a petition of writ of habeas for transportation to his medical expert under any circumstances." Doc. #94 at 2.

In Ivey, the Court concluded: "§2241(c) prevents a district court from issuing a writ of habeas corpus that directs a custodian to produce a prisoner for a physical examination. Not just 'does not authorize' such a step; §2241(c) forbids it[.]" Ivey, 47 F.3d at 183. Because the trial court was prohibited from ordering this relief under §2241(c), the Court reasoned, it similarly could not order the state to produce plaintiff under the All Writs Act, which "contains limitations that prevent a judge

12

from using it to undermine other laws." Id. at 185. The importance of the expert is not the decisive factor: "A desire, even a pressing need, for an examination by a potential expert witness[]" does not create authority for a district court to order the relief Ivey sought, and plaintiff seeks. Id. at 183.

The Seventh Circuit considered at length the impact that denying Ivey's request could have on his civil case:

> Ivey could prosecute this litigation better if he were a free man, or if he were imprisoned in Chicago rather than Taylorville, but that reality does not make him free, require his relocation to the prison most favorably situated to his pending litigation, or compel his custodian to act as his chauffeur. Lawful incarceration curtails many opportunities. Thornburgh v. Abbott, 490 U.S. 401 (1989). Filing a civil suit does not even entitle the prisoner to attend the trial of his own case.

Ivey, 47 F.3d at 186.

Plaintiff contends that the circumstances presented here differ from those in Ivey in three key respects. First, plaintiff asserts that a CT scanner is necessary for plaintiff's examination, and Radgowski does not have one. Therefore, plaintiff contends, "it is impossible to conduct the [examination] at the prison[.]" Doc. #94 at 3. Plaintiff argues that Judge Rovner's concurrence[2] in Ivey "strongly implied that ... a prisoner who

_____

[2] Judge Rovner did express concerns -- which the undersigned shares -- about the practical effect that denying transportation has on an inmate's ability to successfully litigate a §1983 case. But Judge Rovner concluded, as does the undersigned, that "the restrictive language of section 2241(c) deprives the district court of any authority to intervene." Ivey, 47 F.3d at 187 (Rovner, J., concurring).

required off-site testing or equipment would have a more compelling argument and warrant different considerations[.]" Id. However, in this case, defendants have offered to facilitate the transportation of plaintiff to UConn Health Center for an examination. See Doc. #97 at 1-2. UConn Health Center has the ability to conduct CT scans on inmates. See, e.g., Vallejo v. UCONN Managed Health Care, No. 3:13CV00250(SRU), 2015 WL 144639, at *7 (D. Conn. Jan. 12, 2015) (discussing CT scan performed at UConn on a state inmate). Moreover, defendants relate the following based on discussions with plaintiff's counsel: "Additional inquiry then established that the expert did not have to personally take the CT images with his office CT scanner, but that the expert could write the radiology prescription to be carried out by whomever DOC would select and then have the images and radiology report sent to the expert." Doc. #97 at 2-3. Thus, plaintiff does not need to be transported to Dr. Cuicci's office in order to have a CT scan.

Second, plaintiff argues that "[t]he covid-19 pandemic has made it extraordinarily challenging to find an appropriate medical professional to serve as Plaintiff's expert[,]" largely because plaintiff is incarcerated. Doc. #94 at 5. The Court has no doubt that this is true. But the Court has no obligation to ensure that a §1983 plaintiff is able to retain a medical expert, no matter how important such an expert might be to the success of

14

plaintiff's case. See, e.g., El-Massri v. New Haven Corr. Ctr.,
No. 3:18CV01249(CSH), 2019 WL 3491639, at *3 (D. Conn. July 31,
2019); Carley v. Gentry, 454 F. Supp. 3d 1006, 1007 (D. Nev. 2020)
("The in forma pauperis statute, 28 U.S.C. §1915, does not provide
for the appointment of expert witnesses to aid prisoners or other
indigent litigants."); Hill v. Corr. Corp. of Am., No.
07CV00571(LTB)(CBS), 2008 WL 4838570, at *1 (D. Colo. Nov. 6,
2008) ("The right of access to the courts does not extend to
provide witness fees for a witness an in forma pauperis prisoner
claims to be essential to his case."). Moreover, plaintiff has
found an expert, and the Court has allocated funds to pay that
expert to prepare a report. The difficulty is not in finding an
expert. The difficulty is that the expert has asserted that the
examination must occur at his office.

Third, plaintiff asserts that this case is distinguishable
from Ivey because the Court here could "grant[] Plaintiff's
request to use the Court's set aside funds for the transport."
Doc. #94 at 5. However, the primary problem with plaintiff's
request is not cost. The primary problem -- which plaintiff has
failed to address -- is that the Court does not have the authority
to order the State to transport plaintiff, a sentenced inmate, to
an unsecured, private medical office so that he may obtain
evidence to use in his civil case, even if the Court reimburses
the State for the costs associated with doing so. The Court has

authority to order the State to produce an inmate to answer
charges against him in federal court, or to testify at a duly
convened federal proceeding.

In sum, the Court is not persuaded by plaintiff's argument
that the All Writs Act authorizes the Court to order the State to
transport plaintiff to and from Dr. Cuicci's office in Milford to
conduct the examination. The Court in Ivey noted:

> If the Illinois Department of Corrections proposed to
> block a physician from examining Ivey, a district judge
> might properly employ §1651(a). Prisoners have
> constitutional rights of access to the courts, and as a
> prison must permit legal mail to come and go, so it must
> permit lawyers and physicians access to the prisoner.
> Access satisfies the constitutional requirement, however:
> the prison may require the lawyer to visit the prisoner,
> rather than escorting the prisoner to his lawyer's
> offices. ... [W]hy is a proposed examining physician
> different?

Ivey, 47 F.3d at 186. The circumstances of this case do not
present a situation in which plaintiff's "rights of access to the
courts[]" have been infringed. Id. The State has agreed to have
Dr. Cuicci conduct the examination at Radgowski, or to transport
plaintiff to UConn Health Center for the examination. See Doc. #81
at 5. Defendants appear willing to work with plaintiff's counsel
to try to secure Dr. Cuicci temporary privileges at UConn for that
purpose. See Doc. #97 at 2. Moreover, defendants assert that the
State can arrange for plaintiff to undergo a CT scan and have the
results sent to Dr. Cuicci. See id. at 2-3. The Court understands
how crucial a medical examination might be to proving plaintiff's

case. However, it appears that defendants have proposed
potentially workable solutions that would allow plaintiff to have
an adequate examination, but that these proposed solutions are not
amenable to plaintiff's chosen expert.

Plaintiff has no right to a medical examination to assist in
his civil lawsuit, and there are countervailing concerns. "It is
beyond doubt that transporting an inmate to a private physician's
office creates a security risk for numerous people who would be
present in the office as well as for the custodial officers who
would have to effect the transport." Wilson v. Hill, No.
2:08CV00552(NMK), 2011 WL 1630814, at *2 n.2 (S.D. Ohio Apr. 27,
2011).

The Court is sympathetic to plaintiff's situation, and
appreciative of the extraordinary efforts appointed counsel has
undertaken to secure an appropriate examination for plaintiff.
However, incarcerated litigants often face challenges that non-
incarcerated litigants do not, and the Court here does not have
the authority to grant the relief plaintiff seeks. See Ivey, 47
F.3d at 186 ("Ivey could prosecute this litigation better if he
were a free man, or if he were imprisoned in Chicago rather than
Taylorville, but that reality does not make him free, require his
relocation to the prison most favorably situated to his pending
litigation, or compel his custodian to act as his chauffeur.

Lawful incarceration curtails many opportunities." (citation omitted)).

For these reasons, plaintiff's Petition [Doc. #81] is **DENIED.** The Court declines to order the State to transport plaintiff to and from his medical expert's office for the purpose of a medical examination intended to support his civil suit, because it finds it has no authority to do so. However, the Court is hopeful that the parties can work together and come to a creative solution that will enable plaintiff to obtain at least a portion of the relief he seeks. Because plaintiff's Petition is denied, the Court does not reach the issue of whether plaintiff may incur expenses for the cost of transportation and security. Accordingly, plaintiff's Motion Requesting Approval to Incur Expenses [Doc. #82] is **terminated, as moot.**

## III. <u>Conclusion</u>

For the reasons set forth herein, plaintiff's Petition for Writ of Habeas Corpus [**Doc. #81**] is **DENIED,** and plaintiff's Motion Requesting Approval to Incur Expenses [**Doc. #82**] is **TERMINATED, as moot.**

It is so ordered. Dated at New Haven, Connecticut, this 25th day of May, 2021.

<pre>
      /s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
</pre>